Mr. Joe Horn Mount County Attorney Hillsborough County Post Office Box 1110 Tampa, Florida 33601
Dear Mr. Mount:
This is in response to your request for an opinion on substantially the following question:
 DOES HILLSBOROUGH COUNTY HAVE THE AUTHORITY TO ENACT AN ORDINANCE GOVERNING THE ISSUANCE OF LICENSES TO CARRY ELECTRIC WEAPONS OR DEVICES?
Hillsborough County is a charter county whose charter was proposed by the Hillsborough Board of County Commissioners pursuant to Part IV, Ch. 125, F.S., the Optional County Charter Law, and was duly approved by referendum of the county's electors on September 29, 1983. According to your letter, Hillsborough County, acting pursuant to s. 790.06, F.S., has adopted Ordinance No. 83-3 which sets forth the policy and procedure for the issuance of licenses to carry concealed pistols. The county, however, questions its authority to issue licenses to carry electric weapons or devices. You have noted that s. 790.06 makes no reference to licensing of electric weapons or devices but expressly provides for the licensing of concealed pistols.
Section 8, Art. I, State Const., provides that "[t]he right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed, except that the manner of bearing arms may be regulated by law." (e.s.) See, AGO 84-39 concluding that the word "law" as used in this constitutional provision means a state statute adopted by both houses of the Legislature. Accordingly, the Legislature has enacted Ch. 790, F.S., which governs weapons and firearms generally. See, Rinzler v. Carson, 262 So.2d 661 (Fla. 1972) (right to keep and bear arms is subject to right of people, through Legislature, to enact valid police regulations to promote health, morals, safety, and general welfare); Robarge v. State,432 So.2d 669, 671 (5 D.C.A.Fla., 1983), pet. rev. den., 450 So.2d 855
(Fla. 1984) ("In regulating the manner of bearing arms, the state may require that one obtain and possess a license in order to carry a handgun and criminally punish those who do not").
The Legislature has not provided a definition of "arms"; however, the term is generally defined as "[a]nything that a man wears for his defense, or takes in his hands as a weapon." Black's Law Dictionary 100 (5th ed. 1979). See, s. 790.001(14), F.S., defining "electric weapon or device" as "any device which, through the application or use of electrical current, is designed, redesigned, used, or intended to be used for offensive or defensive purposes, the destruction of life, or the infliction of injury." It is clear that electric weapons or devices are subject to the foregoing constitutional provision. See, Davis v. State, 146 So.2d 892, 894
(Fla. 1962), wherein the Court stated that the proviso of s. 20, Declaration of Rights, State Const. 1885, which is substantially the same in s. 8, Art. I, State Const., supra, was "designed to protect the people . . . from the bearing of weapons by the unskilled, the irresponsible, and the lawless."
The history of a statute is material as an aid in determining legislative intent, and in construing statutes courts look to the history, objective and purpose of the legislation. Hoover v. State, 409 So.2d 123 (5 D.C.A.Fla., 1982); Sunshine State News Company v. State, 121 So.2d 705 (3 D.C.A.Fla., 1960); 49 Fla.Jur.2d Statutes s. 157. Chapter 76-165, Laws of Florida, defined "electric weapons or devices" and made them subject to various provisions of Ch. 790, F.S. Section 2, Ch. 76-165 amended s. 790.06, F.S. 1975 to provide in pertinent part that "[t]he county commissioners of the respective counties of this state may at any regular or special meeting grant a license to carry a pistol, electric weapon or device, Winchester or other repeating rifle, only to such persons as are over the age of 21 years and of good moral character. . . ." Thus the boards of county commissioners were expressly authorized to issue licenses for the carrying of electric weapons and devices. See, Iley v. Harris, 345 So.2d 336
(Fla. 1977), concluding that in enacting s. 790.06, the Legislature intended that the respective county commissions issue the requested permit to all applicants possessing the foregoing qualifications. Cf., Brevard County v. Bagwell, 388 So.2d 645 (5 D.C.A.Fla., 1980). Following the decision in Iley v. Harris, the Legislature again amended s. 790.06 in s. 1, Ch. 77-302, Laws of Florida, to provide that "[t]he county commissioners of the respective counties of this state may at any regular or special meeting adopt by ordinance a uniform policy and procedure for the issuance of licenses to carry concealed pistols on the person." (e.s.) The establishment of such uniform policy shall be based upon, but not limited to, enumerated criteria set forth in subsections (1)-(3). See, Capella v. City of Gainesville,377 So.2d 658, 660 (Fla. 1979), wherein the Court noted that where the Legislature amends a statute by omitting words, there is a presumption that it intends such statute to have a different meaning than that accorded it prior to amendment. Cf., AGO 84-39, concluding that a municipality does not have the home rule power to enact an ordinance requiring a license issued by the municipality for the carrying of a concealed firearm within the municipality, in the absence of an express legislative grant by the state, because such regulatory procedures have been statutorily delegated to counties. Currently, neither s. 790.06, nor any other provision of Ch. 790 grants to the several counties the authority to regulate the licensing of electric weapons or devices. Moreover, my examination of the legislative history of s.790.06, F.S., reveals that the Legislature affirmatively intended to limit the authority of Florida's respective boards of county commissioners to issue licenses for concealed pistols only. See, Floor Debate, House of Representatives, May *2444 4, 1977; Floor Debate, Senate, May 30, 1977.
Your letter states that there is a discrepancy between ss. 790.05 and 790.06, F.S. Section 790.05, F.S. provides that:
 Whoever shall carry around with him, or have in his manual possession, in any county in this state, any pistol, electric weapon or device, or Winchester rifle or other repeating rifle without having a license from the county commissioners of the respective counties of this state shall be guilty of a misdemeanor of the second degree. . . . (e.s.)
Thus, s. 790.05 appears to imply that the boards of county commissioners have the power to issue licenses for carrying electric weapons or devices since this statute requires that a person must have a license from the county commissioners in order to lawfully carry or have in his manual possession an electric weapon or device. However, as noted, supra, s. 8, Art. 1, State Const., requires that the bearing of arms must be regulated by a state statute duly adopted by the Senate and the House of Representatives; this mandate would not appear to be satisfied by an implied grant of power. In addition, it is a general rule of statutory construction that in construing conflicting statutory provisions, the last expression of legislative will is the law, and, therefore, that the last in point of time or order of arrangement prevails. Kiesel v. Graham, 388 So.2d 594 (1 D.C.A.Fla., 1980), pet. rev. den., 397 So.2d 778 (Fla. 1981); State v. City of Boca Raton, 172 So.2d 230 (Fla. 1965). As s. 790.06, F.S., was amended subsequent in time to s. 790.05, F.S., the foregoing rule requires that s. 790.06 would prevail in any conflict with s. 790.05.
Examination of Ch. 790, F.S., reveals no legislative intent, however, to ban electric weapons or devices. See, e.g., s.790.08(3) (weapons, electric weapons or devices, or arms taken from an arrestee shall be returned upon acquittal or dismissal of charges); 790.22(1) (use of BB guns, air or gas operated gun, electric weapons or devices, or firearms by any child under 16 years is prohibited unless under supervision and in presence of an adult); 790.22(2) (any adult responsible for child under 16 years who knowingly permits such child to possess or use a BB gun, air or gas operated gun, electric weapon or device, or firearm in violation of subsection[1], is guilty of second degree misdemeanor). Cf., s. 790.17. Section 790.221 makes it a felony for any person to own or to have in his care, custody, possession, or control any short-barreled rifle, short-barreled shotgun, or machine gun unless such firearms are lawfully owned and possessed under federal law. The application of the maxim, expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another, indicates that since electric weapons or devices are not among those enumerated prohibited weapons, the ownership of such weapons or devices would not be illegal. Cf., s.790.225 as created by Ch. 85-258, Laws of Florida, prohibiting the manufacture, sale, display, use, ownership or possession of certain self-propelled knives. See, Devin v. City of Hollywood,351 So.2d 1022 (4 D.C.A.Fla., 1976). As to when an individual may properly have in his manual possession an electric weapon or device without violating s. 790.05, F.S., see generally, ss. 790.05, 790.051, 790.052 and 790.25(3), F.S. (1984 Supp.), as amended by s. 68, Ch. 85-62 and s. 5, Ch. 85-332, Laws of Florida, for persons exempted from the operation of ss. 790.05 and 790.06.
In order to remove any doubt as to the county commissioners' authority pursuant to s. 790.05, F.S., however, the Legislature may wish to clarify this issue by amending Ch. 790 to positively address the respective boards of county commissioners' power to grant licenses for electric weapons or devices.
In sum, unless and until judicially or legislatively determined otherwise, it is my opinion that the board of county commissioners is not authorized to enact ordinances governing the issuance of licenses to carry electric weapons or devices.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General